

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-9-2008

# USA v. Bellinger

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-5040

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Bellinger" (2008). *2008 Decisions.* Paper 868.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/868

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-5040
_____

UNITED STATES OF AMERICA

v.

EDWARD BELLINGER,
a/k/a Matthew Berringer,
a/k/a Carlos Key


Edward Bellinger,

Appellant
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 02-cr-00644)
District Judge: Honorable Anita B. Brody

Argued June 5, 2008

Before: AMBRO, CHAGARES, and COWEN, Circuit Judges.
_____

(Filed: July 9, 2008)
_____


Ellen C. Brotman
Lathrop B. Nelson, III (Argued)
Tanya M. Johnson
Montgomery, McCracken, Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA 19109

Counsel for Appellant
Edward Bellinger

Patrick L. Meehan
Robert A. Zauzmer
Vicki J. Markovitz (Argued)
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

Counsel for Appellee
Government of the United States of America

_____

OPINION OF THE COURT
_____

CHAGARES, <u>Circuit Judge</u>.

Edward Bellinger appeals his conviction for possession of a firearm by a convicted

felon, in violation of 18 U.S.C. § 922(g)(1). Specifically, Bellinger challenges the

District Court's denial of his motions to suppress and for judgment of acquittal. As

Bellinger's arguments are unpersuasive, we will affirm the Court's judgment of

conviction.

I.

On April 2, 2002, Bellinger borrowed a burgundy Oldsmobile with tinted windows

from an acquaintance, Angela Landers. After allowing his neighbor, Delonda Pearson, to

run an errand with the car, Bellinger got in the vehicle with another neighbor, Jermaine

Gailyard. Bellinger asked Pearson to drive Gailyard to 57th street in West Philadelphia.

En route, as Bellinger sat in the front-passenger seat and Gailyard sat in the back seat, two

2

Philadelphia Police officers pulled over the Oldsmobile. They did so because the car met a radio flash description of a red, medium-sized car with tinted windows that had been involved in a rash of prior robberies and aggravated assaults.

During the stop, Gailyard was unable to produce identification, and he was ordered out of the vehicle. As Gailyard exited the car, one of the officers heard a "clink" and discovered a loaded .45 caliber Smith & Wesson handgun which had fallen from Gailyard's waistband onto the ground. The officer then ordered Pearson and Bellinger out of the car and spotted a .40 caliber Beretta handgun jammed underneath the right side of the front-passenger seat, where Bellinger had been. This was the firearm Bellinger was charged with possessing.

After a jury convicted him on this charge, the District Court sentenced Bellinger to 102 months imprisonment, from which he filed a timely appeal.

II.

We review the District Court's denial of a motion to suppress "for clear error as to the underlying factual findings" and exercise "plenary review of the District Court's application of the law to those facts." United States v. Perez, 280 F.3d 318, 336 (3d Cir. 2002).

Where the district court denies a motion for judgment of acquittal, we review such denials "de novo and independently appl[y] the same standard as the District Court." United States v. Bobb, 471 F.3d 491, 494 (3d Cir. 2006). As such, we review the evidence in the light most favorable to the prosecution to determine whether any rational

3

trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence. See United States v. Lopez, 271 F.3d 472, 486 (3d Cir. 2001). "Only when the record contains no evidence, regardless of how it is weighted, from which the jury could find guilty beyond a reasonable doubt, may an appellate court overturn the verdict." United States v. McNeill, 887 F.2d 448, 450 (3d Cir. 1990) (quoting Bradom v. United States, 431 F.2d 1391, 1400 (7th Cir. 1970)).

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 1291.

### III.

Bellinger first challenges the District Court's denial of his motion to suppress, asserting that the arresting officers lacked reasonable suspicion of a traffic violation to justify pulling over the burgundy Oldsmobile. As we have explained, reviewing courts should "look to whether specific, articulable facts produced by the officer would support a reasonable suspicion of a traffic violation." United States v. Delfin-Colina, 464 F.3d 392, 398 (3d Cir. 2006); cf. Devenpeck v. Alford, 543 U.S. 146, 152 (2004) (looking, for purposes of probable cause, at "the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest"). Reasonable suspicion "'requires a showing considerably less than preponderance of the evidence,' and only a 'minimal level of objective justification' is necessary" for a traffic stop. Delfin-Colina, 464 F.3d at 396 (citation omitted).

Here, the record demonstrates that the officers were aware of the vehicle's tinted

4

windows, and that the tinting did not permit them to see the inside of the car through the windshield. Appendix (App.) 14. Because any tinting which does not "permit a person to see or view the inside of the vehicle through the windshield, side wing or side window of the vehicle" is prohibited under Pennsylvania law, 75 Pa.C.S.A. § 4524, the facts articulated by the officers demonstrate reasonable suspicion of a traffic violation. Accordingly, the officers were justified in conducting the traffic stop, and the District Court properly denied Bellinger's motion to suppress.

IV.

Bellinger's second contention is that the Government produced insufficient evidence to show that he possessed the firearm in question. Because Bellinger was not found in actual possession of the Beretta, the specific issue, as the District Court properly noted, is whether there was sufficient evidence at trial to prove that Bellinger constructively possessed it.

To prove constructive possession, the Government must have shown that Bellinger knew of the gun and had both the power and intent to exercise dominion and control over it. See United States v. Iafelice, 978 F.2d 92, 96 (3d Cir. 1992). While proximity to the gun is a substantial consideration in this analysis, see Lopez, 271 F.3d at 487-488, proximity alone is insufficient. See United States v. Jenkins, 90 F.3d 814, 818 (3d Cir. 1996). Thus, we look for certain "plus factors," such as "connection with a gun, proof of motive, a gesture implying control, evasive conduct, or a statement indicating involvement in an enterprise" in completing the inquiry. United States v. Booker, 436

5

F.3d 238, 242 (D.C. Cir. 2006) (quoting United States v. Alexander, 331 F.3d 116, 127 (D.C. Cir. 2003)); accord United States v. Newsom, 452 F.3d 593, 610 (6th Cir 2006); see also McNeill, 887 F.2d at 450 ("Inferences from established facts are acceptable methods of proof when no direct evidence is available so long as there exists a logical and convincing connection between the facts established and the conclusion inferred.").

Here, Bellinger's proximity to the Beretta, in addition to several plus factors, provide sufficient evidence for a rational juror to find constructive possession beyond a reasonable doubt.  For example, the District Court considered that:

> • the Beretta was jammed underneath the right side of Bellinger's bucket seat at an angle difficult for passengers other then Bellinger to reach it;
> • Landers, the car's owner, testified that she never owned any guns, never kept guns in the car, and was the only person who used the car before loaning it to Bellinger;
> • Pearson, the driver of the car at the time of the arrest, testified that she did not have a gun that day, never saw a gun in the car prior to the arrest, and never left the driver's seat after she entered the car;
> • Gailyard immediately went to the back seat upon entering the car; also, the Smith & Wesson that fell from his pants required different sized bullets than the Beretta;
> • Bellinger had borrowed the car from Landers, had lent the car to Pearson, then requested that Pearson drive Gailyard and himself to their desired location; also, despite the fact that the officers directed their questions at Pearson and asked Bellinger to be quiet and let Pearson answer, Bellinger was the one who answered all of the officers' questions and who looked for the vehicle's registration when the officers requested it;
> • it took the passengers approximately 15 seconds to roll down their windows after the officers knocked on the windows of the car.

App. 24; 31-35.

Given this and other evidence indicating that Bellinger was the only person that could have placed the firearm under his seat, that Bellinger exercised control over the

vehicle at the time of the traffic stop, and that Bellinger acted suspiciously and evasively, there is a logical and convincing connection between the facts established and Bellinger's constructive possession of the firearm in question. See Booker, 436 F.3d at 241 ("[W]e give 'full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact.'"). Accordingly, the District Court properly denied Bellinger's motion for judgment of acquittal and we will affirm the Court's judgment of conviction.